I'm Roger Nuttall from Fresno, California, here on behalf of Raymond Ronell. As each of you, I'm sure, are aware, having read the pleadings, had our motion to stay these proceedings, been granted by the court to allow for some procedural reformation and to allow me to clear the record, I'd probably be a little less embarrassed than I am appearing before you today. Nonetheless, on behalf of my client, Raymond Ronell, I am asking that the court reach the issues attendant to the search, in this case, as related to the search warrant and the validity of saying, despite the plea, yes, as I'm sure you can tell from all of the pleadings, I have to essentially fall on my sword and say that I did not know that the requirements for preserving the issue of the search warrant by simply entering a plea without a plea agreement straight up to all the accounts, as we do in state court. And that was, of course, the basis for the motion to stay the proceedings and go back to the of the court a court trial simply stipulating to the facts as related to the hearing on the motion to suppress. And that, by going back to the district court, as you know, in that context would have set the record straight so that we could fully litigate the issue of the search. Quite frankly, under the Strickland test, I did not properly advise my client as to the necessary procedures attendant to preserving his right to have the appeal on the issues attendant to the search. And I must suggest in that regard, without claiming anything other than the facts attendant to the issuance of the search warrant and the execution of the search, in my experience and from my perspective, raised very significant issues whereby it was my opinion when we entered the plea that we would have a very meritorious case on appeal as related to the search warrant and the resultant search and the evidence. Tell us why you think it's so strong. Oh, thank you, Your Honor. You're confessing incompetence. In that sense, let me simply say this, that in the first instance, with respect to the affiant, Officer Reyes, we noted, and I'm just going through this as we went through it in our brief, that little weight should have been given to his qualifications. As in the Weber case, he utilized all of the classic generalizations as related to persons suspected of being child abusers or those endeavoring to illicitly deal with children and child pornography. References made to these people do this, these people do that. Without any specific reference, in this case, to Raymond Ronell, the specific defendant. Notably. Now, wait, these statements were made in what context? These statements were made by the affiant as related to his qualifications to suggest that there was probable cause to believe in this instance, pursuant to his experience, that. That the computer had further images? Pardon me? Are you talking about the computer? No, no. I'm talking about the simple statement in the first instance that this officer felt or had reason to have a good opinion that the appellant was such a person, was probably such a person that would be a noted child molester or might possess child pornography. Now, at Page, or strike that, in, in, in, excuse me? Wait, so what's the strongest argument you have with respect to the search? You think that the warrant wasn't effective because of Officer Ray's? Oh, no, that's just the first prong of it. That's the first prong of it. The fact of the matter is that the affidavit failed to connect the defendant, the appellant's residence, with the commission of the offenses for which he was arrested. In other words, there were no facts set forth that would lead to a common-sense conclusion that there would be evidence of a crime presently located in the appellant's residence. Indeed, the nature of the offenses were not even described in the affidavit, nor was the evidence sought to be obtained. Well, counsel, that's not, that's not entirely true. I'm looking at Page, looks like it's Page 12 of the, of, I assume that's either the affidavit or the search warrant. I am looking at Officer Ray's affidavit, and he, he says that B1, which is the victim, stated Raymond has since invited her to his house to play on numerous occasions. Raymond has taken pictures of her and several of her friends. She and her younger sister were at his house during this time. Raymond had them do a traditional Hmong dance while he video recorded the two girls, and she describes other photographs that he has taken and that she had visited his house. So why doesn't that provide a basis for searching his house for, for images of these girls? Well, first of all, with respect to the pictures taken, for example, the traditional Hmong dance, there was nothing in any of that to suggest that these were illicit photos or that they related to matters of sexual content. In other words, the offenses for which he was arrested were sexually related offenses, but there, it was never alleged in the offense or for the offense for which the appellant was arrested or for any other specific sexual offense. Where would his camera be? Pardon me? Where would his camera be? I'm sorry, I didn't see. I thought this was about, I thought, I thought this was in part about photographs. Well, the photographs that he took with his camera, they went into that camera and did not find any illicit photographs, as far as I can recall. And it was only based upon the fact that he lied purportedly about having a camera of his own. He said he did not. He actually said it was his father's camera. But there was nothing that was retrieved by virtue of that camera that would have suggested that, number one, he had illicit evidence in his residence or anything on his computer for that. But it's pretty clear that from the from the victim's statements that she had been to his house and that he had taken what she described as fun photographs of her and her sister. Now, those photographs are not on the camera that is found in his car, which he denied even knowing anything about it might be it might be his father's. But he did not even having a camera at that point. We've got some really inconsistent statements. And we have quite a bit of evidence that there that these girls have been at his house and that there have been other girls seen by the neighbors going to this man's house. And he's lying to the police about cameras which are found in his car and will not allow them to to view the cameras. Now, why doesn't that provide them with some basis for wanting to know what's going on here when he's just kidnapped a little girl? Well, first of all, again, looking at the four corners of the affidavit itself, there's really no conclusion or legitimate conclusion that he kidnapped the little girl. There's a conclusion that he was with the little girl and that she got her garments wet and that he covered her. But there was there was nothing, Your Honor, of a sexual nature. Certainly, there was evidence that he had taken fun photographs or ethnic dancing type photographs and that they were in the house. But here again, it's a it's a leap to suggest that that type of information is sufficient to establish probable cause. OK, thank you. You've more than used your time. Thank you very much, Your Honor. Morning, Your Honors. Brian Enos on behalf of the United States. Say that last name again. Enos, E-N-O-S. Thank you. Sure. I feel compelled at the outset to address waiver because the last thing I want to do is waive the waiver as indicated in a written decision offered by one member of the panel and also in bunk endorsed by a second member of our panel today. And that is Rules 11-A-2 of the Federal Rules of Criminal Procedure, as well as the Lopez-Armena and Jacobo Castillo case, clearly revealed that the entirety of defendant's argument challenging Judge O'Neill's denial of his suppression motion has been waived. The Lopez-Armena case originally said, OK, we're going to analyze Rule 11-A-2. And so long as the district court doesn't muddy the waters, so to speak, by referencing appellate rights during the change of plea hearing, an unconditional plea without a reservation of any appellate rights waives that defendant's right to appeal any district court rulings that preceded the change of plea date itself. Jacobo Castillo provides a limited exception to that general rule, and that is if the government essentially waives the waiver by arguing the merits of an argument that, frankly, hadn't been preserved by 11-A-2, then that issue's back in play. That's not the issue here. Go ahead. I'm sorry. That's OK. I just, you've preserved your waiver. OK. We accept it. Great. I just want to make sure it's clear, though, because I did see some language in Jacobo Castillo that says, hey, if the government comes up and starts arguing the merits, then that is maybe. We understand. OK. Now, as one member of the court is asking you now to go beyond this appeal and keep us from having a collateral attack, so would you talk a little bit about whether there really was a meritorious appeal here? Sure. In addition to what the panel has already raised, there's a critical piece of evidence in this case that linked Mr. Ronell's behavior on November 25, 2005, to the computer in his home. And that's the fact that he had a digital camera that he was, frankly, being dishonest about. Initially, I don't have a camera. Police officer says, what about this camera? Well, that's my dad's camera. You take pictures of the victim here? No. Victim simultaneously, yeah, he took pictures of me both today and previously. There's a Saris case that I cited. Candidly, it's a District of Florida case, but it has been endorsed by the 11th Circuit that says it's common knowledge, if you've got a digital camera, that the images of that camera would be stored on a computer. Therefore, it's reasonable to deduce that if you've got a digital camera and some suspicious activity about, in this case, someone taking, without her parents' permission, a 12-year-old away from her home for nearly four hours, and then directing her to remove her pants because she got them wet on a slide, as an aside, you keep your pants on whether she's wet or not, then it's natural to deduce that the images from that camera would indeed be on the computer. I'm not even talking about the camcorder issue, which, once the investigators saw that, then Mr. Ronnell says, forget it, I'm waiving my consent, or I'm revoking my consent to search anyway. So we really do have compelling evidence that there was, within the four quarters of the affidavit, that there was evidence of a crime being committed both in Mr. Ronnell's home, as well as the computer that resided therein. And sure enough, once the search warrant was executed that evening, late that evening, and granted, this is beyond the four quarters of the affidavit, over 2,000 images of child pornography was found. So that's the tether. I welcome any questions on any issue, but briefly, with respect to the sentencing issue at the very end, defendant candidly admits there's no law to support his claim that the investigative team must essentially halt work once he enters a change of plea. To the contrary, sentencing guideline 1B1.3, 1A1, I believe, says you can look at any evidence relevant to the matters charged, and that's what this subsequent evidence was. It was, one, a follow-up interview with the victim, where she frankly acknowledged that she'd been molested by a defendant. Two, it was an affidavit from an ICE agent in Iowa that was engaged in a, the other side of a distribution, a child pornography distribution ring, if you will, from Mr. Ronnell. And then three, it was the completion of a computer forensic report. I welcome any and all questions the Court may have. Are there any questions? There don't appear to be any. Thank you. Thank you very much. Are there any questions of the defense? Thank you. The case just argued is, you've used your time. Thank you. The case just argued is submitted for decision.
judges: Panner, Schroeder, Bybee